UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RAYMOND HARRIS, JR.,

        Plaintiff,

v.

UNKNOWN CORL et al.,

        Defendants.

_____/

Case No. 1:19-cv-118

Honorable Paul L. Maloney

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

    I.    Factual allegations

Plaintiff Raymond Harris, Jr., presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the

following RMI officials: Sergeants Unknown Ogle, Unknown Bleedlove, Unknown Miller, and Unknown Sisson; Correctional Officer Unknown Corl; Lieutenant Unknown Bond; Prison Counselor Unknown Wixson; and Warden Carmen Palmer.

Plaintiff alleges that, on August 2, 2017, between 8:30 and 9:55 a.m., he was cooking food in the unit microwave. Defendant Corl walked through the door and stated, "[T]hat's a D.D.O. (disobeying a direct order)." Plaintiff responded, "[F]or what[?]" (Compl., ECF No. 1, PageID.4.) Corl did not answer; she just walked out the door. Plaintiff was confused, but he continued to prepare his food.

Minutes later, Defendant Ogle approached Plaintiff, asking what was going on. Plaintiff replied that he was just cooking his food. Ogle responded that he had heard something else, and he asked Plaintiff to turn around and cuff up. Plaintiff complied. Defendant Ogle then escorted Plaintiff to segregation, advising Plaintiff that he was being placed in segregation because he had refused to lock down. Plaintiff denied causing any problems or disobeying any order to lock down. Plaintiff asked for a hearing investigator, and Ogle agreed to relay his request.

Plaintiff remained in segregation, but he did not hear anything about a misconduct charge or a hearing on that charge. From his review of legal materials, he learned that prison policy required that a hearing be held on any Class-I or Class-II misconduct within seven business days. After seven business days had passed, on August 12, 2017, Plaintiff stopped Defendant Bond during his round, advising Bond that Plaintiff had been kept in segregation for seven days without receiving a misconduct report or hearing. Defendant Bond assured Plaintiff that he would look into it. A few hours later, Defendant Bond returned to report that there was no misconduct charge filed against Plaintiff. Plaintiff then asked to be released from segregation immediately. Defendant Bond advised Plaintiff that he needed to make some calls and look into the situation.

2

A few hours later, Plaintiff stopped Defendant Bleedlove, again explaining his detention in segregation without having received a misconduct charge or hearing. Defendant Bleedlove advised Plaintiff that there was nothing he could do. Plaintiff heard nothing more on August 12, 2018.

On August 13, Plaintiff asked his unit correctional officers to tell the prisoner counselor or assistant resident unit supervisor about the problem. Plaintiff later stopped Defendant Sisso and repeated his complaint. Defendant Sisso told Plaintiff that he would look into it. A few hours later, Plaintiff stopped Defendant Miller and again repeated the circumstances about which he complains. Defendant Miller also promised to look into it. Between 6:00 p.m. and 7:00 p.m., Plaintiff was told to pack his belongings, because he was being released from segregation.

Plaintiff complains that he was kept in segregation for 12 days, without being charged with a rule violation and without receiving a hearing, in violation of prison policy and his right to due process. For relief, Plaintiff seeks compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

To the extent that Petitioner claims that his placement and retention in segregation violated prison policy, he fails to state a claim under 42 U.S.C. § 1983. Defendants' alleged failures to comply with an administrative rule or policy do not themselves rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to

the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, Plaintiff's allegations do not support a due process claim. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court established the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation for 30 days did not implicate a liberty interest, because the segregation at issue in that case did not impose an

atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Here, Plaintiff does not suggest that the conditions of his segregation at RMI were extraordinary in any way. Instead, his claim is limited to the simple argument that he was kept in segregation for 12 days. However, Plaintiff's 12-day confinement in segregation was significantly less than the 30-day confinement at issue in *Sandin*, which the Supreme Court held did not implicate a liberty interest. Under the clear rule of *Sandin*, Plaintiff's allegations do not state a due process claim.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: April 18, 2019 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge